IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alfredo Umali,           Case No. 3:15CV02663

    Plaintiff,

    v.          **ORDER**

Educational Service Center of Lake Erie West,

    Defendant.

In this employment discrimination case, plaintiff, Alfredo Umali, a former employee of defendant Educational Services Center of Lake Erie West (ESC), claims that his termination from his position as a Student Services Supervisor was due to his Asian (Filipino) ethnicity and his age. In addition, plaintiff's complaint includes claims for breach of contract and implied breach of contract.

Pending is the defendant's motion for summary judgment. (Doc. 11). For the reasons that follow, I grant the motion.[1]

### Background

Plaintiff, who received his high school and undergraduate education in the Philippines, obtained a Master's Degrees in Educational Administration and Special Education from the University of Cincinnati. After working elsewhere in Ohio since 1996, on August 18, 2005, plaintiff

---

[1] Plaintiff's opposition to defendant's motion for summary judgment focuses on alleged discrimination due to ethnicity, without meaningful discussion of his claim of age-based discrimination. Accordingly, I forego discussing that claim.

began working for defendant ESC. He remained employed there until September 11, 2015. At the time of his termination, the stated reason was a reduction in force due to loss of funding.

ESC provides teachers to the school districts with which it works to assist in educating pupils with special physical, mental, or other educational needs. During the 2014-15 school year, plaintiff supervised seventeen teachers: eight in ESC's Multiple Disabilities (MD) program, two in its vision impaired (VI) program, six in its adaptive physical education (APE) program, and one classroom assistant.

In April, 2015 ESC's Superintendent, Sandra Frisch, informed him and the eight MD teachers whom he supervised that as of the end of the school year, ESC was to lose the last of its MD funding contracts for the 2015-16 school year. Ms. Frisch advised plaintiff to look for work elsewhere.

On June 5, 2015, Frisch and plaintiff's immediate supervisor, Brenda Gift, met with him. They told him that due to the loss of the MD programs, ESC was eliminating his job for the next school year. According to Frisch, "There is no MD Program . . . anymore and there is [no] position for you." (Doc. 1, ¶ 14).

On July 23, 2015, plaintiff received a letter from ESC outlining the reduction in force for the 2015-16 school year and the suspension of his employment contract, which, at the time, had two years of its three-year term remaining. This letter referred to ESC Governing Board Policy 1540, relating to suspension of ESC administrative contracts per O.R.C. § 3319.171, one of the statutory provisions establishing and regulating ESC's operations.[2] ESC suspended plaintiff's contract, thereby effectively terminating him as of September 11, 2015, his last day on the job.

---

[2] Plaintiff acknowledges that he understood that in accordance with Governing Board policies and the Revised Code, ESC could cancel or suspend his employment contract.

2

Plaintiff claims that his position was filled by Caucasians. ESC asserts that the evidence shows that it did not replace him; instead, ESC states, it assigned that portion of his prior duties that had not related to the MD program in part to Ms. Gift and in part to Tony Naveaux, both Caucasians.

## Discussion

### A. Discrimination

The dispositive issue in this case is whether ESC replaced the plaintiff or whether, without replacing him, it simply assigned that portion of his work that he would have done had he remained with ESC to others to handle.

There is no dispute that overseeing eight MD teachers had been a significant part of plaintiff's job duties or that ESC had no funding for its MD program after the 2015-16 school year. This meant that if ESC was not to let plaintiff go and was to keep plaintiff mutually gainfully employed, it had either to assign other work, then being done by other employees, to plaintiff or terminate someone else and put plaintiff in that person's place.

Plaintiff fails to present any evidence that such options existed for either ESC or for him once it had lost its MD program funding. To the extent, which is modest, at best, plaintiff contends that ESC should have assigned additional work to fill in the gap left by the loss of the MD program, plaintiff fails entirely to offer evidence that such work (or another position) existed, that he would have been qualified to do it (or fill the position), and that (had he shown such work or position existed) ESC gave it to a Caucasian.

Plaintiff's case stands or falls on the law applicable to reductions in force, which is somewhat *sui generis*. Whereas in the conventional employment discrimination case the focus typically is on qualifications at the *prima facie* stage and performance at subsequent stages, a workforce reduction often affects qualified employees who have been doing a good job. *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1464-65 (6th Cir. 1990).

3

In *Barnes*, the court stated:

> When work force reductions by the employer are a factor in the decision, "the most common legitimate reasons" for the discharge are the work force reductions. By showing the other elements of a *McDonnell Douglas* case, a plaintiff has not presented any evidence indicating that the work force reductions are not the reasons for the discharge and therefore does not make out a *prima facie* case absent additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.

*Id*. at 1465 (citing *LaGrant v. Gulf and Western Mfg. Co.*, 748 F.2d 1087, 1090 (6th Cir.1984) ("[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of [ethnic] discrimination") (other citations omitted).

Whether viewed through the lens of a *prima facie* case or as a challenge to the *bona fides* of ESC's legitimate, non-discriminatory assertion that plaintiff lost his job solely as a result of unwelcome economic circumstances, the result here is the same.

Here, ECS offers unrefuted evidence that it split plaintiff's duties with the VI and ADP programs between Gift and Naveaux. Plaintiff offers no evidence that ESC lessened their workload in other areas when it did so. Indeed, this is not even the commonplace situation where the work remains the same, but there are fewer workers to do it.

Plaintiff principally relies on the decision in *Pierson v. Quad/Graphics Printing Corp*., 749 F.3d 530, 538 (6th Cir. 2014), claiming that the situation here replicates the situation in that case, in which the court rejected the reduction in force contention. That case is readily distinguishable from this.

There, the employer, as a cost-cutting move, fired a plant manager. Rather than parceling out the work he had done–which, unlike here, remained the same before and after his firing–the evidence showed that the employer had replaced him from within with a substantially younger employee. The work and duties the replacement had been doing before–and even the workspace in which he did it–changed to that which the plaintiff had been doing. The shell was the same, the pea was the same.

The evidence here shows nothing like the situation in *Pierson*. There is nothing in the evidence to suggest that Gift or Naveaux changed offices or left off their other duties or passed them off to other employees. Though their day-to-day work life was not the same–it had altered a bit–it had not changed entirely. Gift and Naveaux simply had to do more in addition to what they had to do before.

*Barnes, supra*, makes clear that, "[a] person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." 896 F.3d at 1465.

That is what happened in *Pierson*; that is not what happened here. A rational jury could only find on the basis of the undisputed or unrefuted evidence in this case that plaintiff lost his job due to economic events beyond his control, and no discriminatory animus of any kind played a role in his termination.

Therefore, ESC is entitled to summary judgment as to plaintiff's claim of ethnic discrimination.

## B. Breach of Contract

### 1. Plaintiff's Written Contract

When he lost his job, plaintiff was about to begin the second of a three-year term under his written contract with ESC. Plaintiff claims that not permitting him to complete the agreed term constituted a breach of that contract and entitles him to damages.

The General Assembly provides for the establishment and operation of educational services centers such as ESC in O.R.C. § 3311.05. All such centers have governing boards that appoint, on nomination by the Superintendent, among others, supervisors such as plaintiff. O.R.C. §§ 3319.02(C), (E). Section 3319.02(E), which governed plaintiff's contract with ESC provides, *inter alia*, that contracts may be for a term of up to five years and may be suspended pursuant to §§ 3319.02(C) or (E).

Pursuant to O.R.C. § 3319.171, the ESC Governing Board adopted Policy 1540 relating to suspension of contracts. Among the considerations are the Center's financial conditions per O.R.C. § 3319.171(B)(1). In addition to describing plaintiff's job description, Section II of plaintiff's employment contract also states that the contract is subject to Policy 1540 and is contingent on available funding.

Pointing to his contract's three-year term, plaintiff contends that the Center failed to comply with Policy 1540 and, thus, breached the contract. The linchpin of his challenge is that ESC failed to comply with the mandate of Policy 1540 that "the primary factor in any reduction of administrators will be in the best interest of the Center." In plaintiff's view, his educational accomplishments, training, experience, and unblemished prior performance made him better able to perform his non-MD duties than his co-workers, Ms. Gift and Mr. Naveaux. By not keeping him to do that work, he contends, ESC ignored Policy 1540 and, thus, breached his contract.

In making this argument, plaintiff apparently hopes that I (or a jury) would look past the indisputable fact that the loss of funding to pay him to do a significant part of the work he had been doing meant that this work was no longer there. That cannot and would not occur.

In any event, plaintiff's contention comes down to a demand that I (or a jury) substitute my (or its) judgment as to what, under all the circumstances as they appeared at the time, appeared to be in the best interests of ESC (not the plaintiff's best interests). Ohio law most emphatically does not permit judges or jurors to substitute willy-nilly their subjective, largely uniformed sense of what was "best" for that of the agency's Governing Board. Simply put, "the judiciary will not second guess business judgments by an employer making personnel decisions." *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App. 3d 663, 669 (1990); *accord Brown v. Renter's Choice, Inc.*, 55 F. Supp. 2d 788, 795 (N.D. Ohio 1999) (Gwin, J.) ("An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its

action is not for a discriminatory reason.'") (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir.1984)).

Even if plaintiff is correct (and he has presented no evidence aside from his own conclusory assertions in that regard) that he was better able than either or both of those co-workers to do the remnant of his work as well as theirs, there is no lawful basis whatsoever on which–even if he had made that showing–I could or would substitute my judgment in that regard for ESC's.

### 2. Implied Contract

Plaintiff claims that because five years before his termination, ESC had adjusted its workforce to enable another employee at risk of losing his job to continue with the agency, he had an implied contract with ESC that it would do likewise. Aside from failing in any way whatsoever to align the facts and circumstances then with ESC's and his own in 2015, plaintiff seeks to have me ignore the fact of loss of funding for and elimination of the MD program.

ESC appears to argue that Ohio law *in toto* does not recognize implied contracts. While that does not appear always to be so, I agree that there is no basis on which in this case I (or a jury) could find that the parties had an implied agreement to make a place for plaintiff, even where financial constraints compelled suspension before the contract's term ended.

Regardless of the accuracy of ESC's assertion that Ohio law precludes implied contracts, the plaintiff, in any event, has failed to show that he could prove the existence of such a contract. As with an express contract, plaintiff must, *inter alia*, set forth proof of a "meeting of the minds." *State v. Smith*, 2010 WL 5276934, *5 (Ohio App.) (quoting *Rumpke v. Acme Sheet & Roofing, Inc*. (Nov. 12, 1999), Montgomery App. No. 17654). This necessarily "would include the benefit [plaintiff] would receive." *Id*. With an implied contract, a "'meeting of the minds' is inferred from the surrounding circumstances, including the parties' conduct and declarations, which show that the contract exists as a matter of tacit understanding." *Id*. (quoting *Rumpke, supra*).

Plaintiff not only has failed to present evidence on these elements, he has hardly tried to do so. Simply pointing to something that, under unknown, much less equivalent circumstances happened five years earlier, hardly can show that ESC and plaintiff agreed that he would have the same opportunity, regardless of anything and everything.

Therefore, ESC is entitled to summary judgment as to plaintiff's claim for breach of an implied contract.

**Conclusion**

There is nothing in the record that supports a plausible inference, much less provides triable proof, that plaintiff's ethnicity played any role whatsoever in his loss of his job. Plaintiff was caught and expelled in a reduction of force brought on by circumstances over which neither ESC nor he had any control. In declining to offer or, in all likelihood, even consider other options, ESC was acting in complete accord with Policy 1540 and the Ohio laws controlling its operations. Nothing required it to prefer plaintiff over its other funded employees, whose contractual rights would no doubt have been affected adversely if ESC had taken the course plaintiff claims it should have.

Nor is there any basis on which a rational trier of fact could conclude either that ESC breached its contract with plaintiff or that an implied contract existed that it otherwise breached.

It is, accordingly, hereby,

ORDERED THAT: defendant's motion for summary judgment (Doc. 11) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

8

Plaintiff not only has failed to present evidence on these elements, he has hardly tried to do so. Simply pointing to something that, under unknown, much less equivalent circumstances happened five years earlier, hardly can show that ESC and plaintiff agreed that he would have the same opportunity, regardless of anything and everything.

Therefore, ESC is entitled to summary judgment as to plaintiff's claim for breach of an implied contract.

**Conclusion**

There is nothing in the record that supports a plausible inference, much less provides triable proof, that plaintiff's ethnicity played any role whatsoever in his loss of his job. Plaintiff was caught and expelled in a reduction of force brought on by circumstances over which neither ESC nor he had any control. In declining to offer or, in all likelihood, even consider other options, ESC was acting in complete accord with Policy 1540 and the Ohio laws controlling its operations. Nothing required it to prefer plaintiff over its other funded employees, whose contractual rights would no doubt have been affected adversely if ESC had taken the course plaintiff claims it should have.

Nor is there any basis on which a rational trier of fact could conclude either that ESC breached its contract with plaintiff or that an implied contract existed that it otherwise breached.

It is, accordingly, hereby,

ORDERED THAT: defendant's motion for summary judgment (Doc. 11) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge